IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANITRA ELLERBY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:05cv00208 |
| | ) |
| COVANCE, INC., | ) Judge Thomas A. Wiseman, Jr. |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Anitra Ellerby-Brown[1] ("Plaintiff") filed a complaint under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-311, alleging racial discrimination against Covance, Inc. ("Defendant"). Defendant has filed a Motion for Summary Judgment (Doc. No. 9-1), seeking judgment as a matter of law on Plaintiff's claim under the THRA. Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 12) and Responses to Defendant's Statement of Undisputed Facts In Support of Defendant's Motion for Summary Judgment (Doc. No. 13). Defendant filed a Reply (Doc. No. 14). For the reasons set forth below, Defendant's motion will be granted as to all claims and this matter dismissed with prejudice.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

   A.   **Factual Background**

Anitra Ellerby-Brown is a citizen and resident of Thompson Station, Tennessee. Plaintiff is African-American. Covance is a Delaware corporation organized and doing business in the State of Tennessee. Defendant operates five separate business departments in Nashville.

Defendant's Data Management Department provides data management services for clinical trials for the pharmaceutical and biotechnology industries. The positions within the department include Clinical Data

---

[1] At the time Plaintiff filed the Complaint in March 2005, Plaintiff's name was given as Anitra Ellerby, but based on the parties' subsequent briefing, it appears that sometime prior to her deposition in December 2005, Plaintiff changed her name to Anitra Ellerby-Brown.

1

Associate ("CDA"), Clinical Data Coordinator I ("CDC I"), Clinical Data Coordinator II ("CDC II"), Senior Data Coordinator, and several management positions. From September 2001 until she resigned in December of 2004, Plaintiff worked as a CDC I in Defendant's Data Management Department in the Nashville office. Plaintiff's responsibilities as a CDC I included reviewing and comparing data received from outside sources to data in the system to make sure it was "clean"; sending out queries; running programs; interpreting data; organizing files; working to decrease the backlog of unclean data and working with the clinical monitoring team to some degree. (Dec. 15, 2005 Dep. of Anitra Ellerby-Brown (hereinafter, "Pl.'s Dep.") 16:16-22.)

During Plaintiff's employment, the Data Management Department employed between twenty and twenty-three people, including four African-American employees: Plaintiff, Nova Walker Carter, Vicki Prowell, and Melissa Ellison. (Def.'s Statement of Undisputed Material Facts (hereinafter, "Def's SUF"), ¶ 7.) In addition, Defendant also employed Sachi Amayta, who is Nepalese, as a CDI in the Data Management Department and Jackie Bellamy, who is Vietnamese, as a CDC I. (Def.'s SUF ¶ 9.) Helen Fasshauer, who was the director of the Data Management Department during Plaintiff's employment with Defendant, is Hispanic. (Def.'s SUF ¶ 4.)

Defendant gives employees formal performance evaluations on a semi-annual basis. (Def.'s SUF ¶ 13.) The evaluations rate various aspects of each employee's performance, including the employee's performance of specific job-related "core competencies." Employees are rated on a four-point scale, from "I" (improvement needed) to "M" (meets expectations) to "E" (exceeds expectation) to "F" (far exceeds expectations). (Def.'s SUF ¶ 14.) Each employee receives a rating for each core competency and an overall rating based on the average of the individual ratings. Employee promotions are not based on any minimum scoring system, but instead are based on the employee's performance and evaluations by managers working with the employee.

1. *Plaintiff's Interest in Promotion to CDC II*

On or about January 2004, Plaintiff requested a meeting with her supervisor Beverly Callahan and department manager Ms. Fasshauer to discuss any additional work experience she would need for a promotion from CDC I to CDC II. (Compl. ¶ 6.) Ms. Fasshauer and Ms. Callahan advised Plaintiff that there are two components for an employee to get promoted: (1) a technical component, which requires the

2

employee to demonstrate that he or she can accurately review data; and (2) a behavioral competency component, which concerns how the employee worked with others. (Dec. 16, 2006 Dep. of Helen Bernadette Fasshauer ("Fasshauer Dep.") 9:7-15.) According to Ms. Fasshauer, prior to their meeting in January 2004, Ms. Callahan had made Plaintiff aware of concerns regarding Plaintiff's consistency and accuracy in several of her projects, and Plaintiff had resolved to work through the issues. Specifically, Ms. Fasshauer had learned from the project managers that there was a problem with Plaintiff's generating duplicate and unnecessary queries in at least two different studies, problems that were not common. (Fasshauer Dep. 9-12.) Ms. Callahan and Ms. Fasshauer told Plaintiff that she specifically needed experience in adverse-event reconciliation and medical coding. (Id.) Although experience in these areas was not a prerequisite for a promotion to the CDC II level, Ms. Callahan and Ms. Fasshauer told Plaintiff that it helped to have that exposure. (Id. at 20.)

Between January and May 2004, Plaintiff exchanged e-mails and other communications with Ms. Callahan and Ms. Fasshauer, wherein Plaintiff updated them on progress made in the areas needed for career development. During the same time-frame, Ms. Callahan provided guidance on the types of training classes Plaintiff needed to take. (Pl.'s Dep. 61-63.)

### 2. *Plaintiff's 2003 Performance Evaluation by Ms. Callahan*

In March 2004, Ms. Callahan met with Plaintiff to discuss her performance and review her 2003 year-end performance evaluation. (Compl. ¶ 6.) Ms. Callahan gave Plaintiff an overall rating of "M" (meets expectations) for 2003. More specifically, in the five core-competency categories, Plaintiff received three ratings of "M" and two of "E." Ms. Callahan did not give her any "I" ratings. Ms. Callahan told Plaintiff that in order to get a promotion, she should keep doing what she was doing. (Pl.'s Dep. 27:3-8.) Plaintiff claims she let Ms. Callahan know that she felt she should have gotten a higher rating on the three core competencies for which she received an "M." (Pl.'s Dep. 29:13-18.)

Thereafter, in April 2004, Ms. Callahan recommended Plaintiff sign up for training courses covering specific topics. (Pl.'s Dep. 62-63.) According to Plaintiff, she signed up for five or six different courses including a meeting on diversity and data management on the new OC system. She attended these and other classes between January and May 2004, when there was a realignment within the company and Kathy

3

Bodri took over for Ms. Callahan as Plaintiff's direct supervisor.

        3.    *Plaintiff's Continued Interest in Promotion and Concerns Over Performance*

Shortly after Ms. Bodri became Plaintiff's supervisor, Plaintiff met with Ms. Bodri to discuss career advancement and Plaintiff's desire to be promoted. (Pl.'s Dep. 63:13-19.) During this meeting, Ms. Bodri informed Plaintiff that she had not had any discussion with Ms. Callahan, Plaintiff's prior supervisor, or Ms. Fasshauer, the department manger, regarding Plaintiff's past performance or their meeting with Plaintiff regarding her desire to be promoted to CDC II. (Id.) According to Plaintiff, neither Ms. Callahan nor Ms. Fasshauer had informed Ms. Bodri of the fact that she wanted to be promoted or that she had been working toward meeting the goals of obtaining experience in adverse-event reconciliation and coding as they had suggested in January. (Pl.'s Dep. 60:1-9.)

Between June and August 2004, Plaintiff met with Ms. Fasshauer and Ms. Bodri on several occasions for what Plaintiff described as "verbal reprimands." (Pl.'s Dep. 60-61.) Ms. Fasshauer and Ms. Bodri apparently called these meetings to address negative comments they had heard about Plaintiff's attitude and her work performance. (Id.) One day in July 2004, Ms. Fasshauer and Ms. Bodri called Plaintiff into Ms. Fasshauer's office so they could speak to her about their concerns regarding negative comments they had heard from the staff about Plaintiff's work with her team members and the negative comments Plaintiff had allegedly made about Ms. Bodri, the department and the organizational structure of the department. (Fasshauer Dep. 21-23.) According to Ms. Fasshauer, Plaintiff's team members complained to Ms. Bodri and another supervisor that they did not feel Plaintiff was contributing to the team at the same level as other members. (Id. 23.) Despite these "verbal reprimands" and the concerns about Plaintiff's attitude, Plaintiff continued to express interest in being promoted to the CDC II position. According to Plaintiff, she asked both Ms. Fasshauer and Ms. Bodri during each meeting, "[w]hat do I need to do to correct whatever situation because I really do want to be promoted? I've been working on this for three years – where do we go from here?" (Pl.'s Dep. 60:15-20.)

        4.    *Plaintiff's 2004 Mid-Year Evaluation by Ms. Bodri*

In August 2004, Plaintiff's new supervisor, Ms. Bodri, gave Plaintiff a mid-year evaluation. There is no question that this evaluation, Ms. Bodri's first evaluation of Plaintiff, rated her performance lower than Ms.

4

Callahan's previous evaluation in March 2004. Specifically, Ms. Bodri's evaluation included two "I"ratings indicating she found that Plaintiff needed improvement in at least two areas, while Ms. Callahan's evaluation contained only "M" and "E" ratings, indicating that Ms. Callahan felt Plaintiff had met or exceeded all of the expectations of her job.

After receiving her evaluation from Ms. Bodri in August 2004, Plaintiff prepared a response requesting that "an objective party" review her performance evaluation. (Pl.'s Dep. 112:4-5.) Plaintiff specifically stated that under the circumstances she could not sign the evaluation, but she "would be willing to sign an objective evaluation based on factual information instead of personal feelings." (Id. 112:6-11.) Plaintiff forwarded this response to Jan Curran, Ms. Fasshauer, Ms. Bodri and Kathy Yeager. (Pl.'s Dep. 111-12.) Ms. Curran and Ms. Yeager reviewed Plaintiff's evaluation, returned the evaluation to Ms. Bodri to finalize and then to Plaintiff who subsequently signed the evaluation.

Not long thereafter, Plaintiff contacted her department manager, Ms. Fasshauer, and requested that she be allowed to report directly to her, thereby bypassing her supervisor Ms. Bodri. (Pl.'s Dep. 57:7-15.) Although there is no indication that anyone else in the department was allowed to report directly to the department manager, Plaintiff's request was granted. (Pl.'s Dep. at 57:11-15.) According to Plaintiff, she had been told that her negative attitude was bringing down the department morale and there was no need to discuss anything with any one else in the department. (Pl.'s Dep. at 57:16-23.) Plaintiff reported directly to Ms. Fasshauer until she resigned from Defendant's employment in December 2004.

     5.    *The Promotion Given to Ms. Moore in September 2004*

Plaintiff maintains that Ms. Callahan, Ms. Bodri and Ms. Fasshauer were all aware that she was interested in being promoted to CDC II and that she made an effort to get the experience and the skills necessary to be promoted. Notwithstanding, Ms. Bodri and Ms. Fasshauer decided not to promote Plaintiff in September 2004. There is no evidence that Ms. Callahan was in any way involved in the September 2004 decision.

At the same time Plaintiff was denied her promotion, Ms. Fasshauer recommended that Meredith

5

Case 3:05-cv-00208   Document 15   Filed 05/26/06   Page 5 of 16 PageID #: 128

Moore, who is Caucasian, be promoted from CDC I to CDC II.[2] Like Plaintiff, Ms. Moore had also received a performance evaluation in 2004 for her 2003 performance. Unlike Plaintiff, Ms. Moore, who was evaluated by Ms. Walker Carter, an African-American, received an overall rating of "E" (exceeds expectations).

Plaintiff claims she was told that she was not given the promotion because she "lacked experience." (Compl. ¶ 6.) According to Ms. Fasshauer, however, Ms. Moore was promoted to CDC II while Plaintiff was not because Ms. Moore had received extremely good feedback from her three managers, Ms. Carter, Tricia Casa Santam, and Catherine Sanderson, and Ms. Moore consistently received higher ratings than Plaintiff in her performance evaluations. In addition, the Data Managers were in agreement that Ms. Moore was ready to be promoted, while Plaintiff had issues with some of her project managers. (Fasshauer Dep. 13-16.)

### 6. *Other Promotions Given in the Department*

There is no dispute that during Plaintiff's employment with Defendant, everyone else in her department, including all of the other African-American employees, was promoted, except for Plaintiff. Specifically, Ms. Fasshauer promoted Ms. Walker Carter twice, from Data Manager I to Data Manager II and then to Senior Manager. (Pl.'s SUF ¶ 8.) Ms. Fasshauer promoted Ms. Prowell who, like Plaintiff, reported to Beverly Callahan and then to Kathy Bodri, from CDA to CDC I. (Id. ¶ 9.) She also promoted Ms. Ellison from CDC I to CDC II and then to Senior Data Coordinator. (Id. at ¶ 10.)

### B. Procedural Background

On March 10, 2005 Plaintiff filed a complaint against Defendant in the Chancery Court for Davidson County, Tennessee. On that same day, Defendant removed the case to the United States District Court for the Middle District of Tennessee based upon the court's diversity jurisdiction under 28 U.S.C. § 1332(a).

Plaintiff's Complaint alleges Defendant violated the THRA, charging Defendant with race discrimination. Plaintiff's sole claim is that she was denied a promotion from CDC I to CDC II because of her race, in violation of the THRA. More specifically, in her Complaint she alleges that Defendant's September, 2004 decision to promote Meredith Moore, a white employee, to CDC II, while deciding not to promote

---

[2] The Court notes that, contrary to many cases involving claims of discrimination based on failure to promote, the decision not to promote Plaintiff was not actually connected to or dependent on the decision to promote Ms. Moore, Plaintiff's white counterpart. Rather, although Ms. Moore was promoted to the same level to which Plaintiff sought a promotion, the CDC II position was still available to other individuals who qualified for it. (Fasshauer Dep. 15:11-13.)

6

Plaintiff, an African-American, was based on race.

Defendant filed its Answer on March 10, 2005. On January 31, 2006, Defendant filed its Rule 56 Motion for Summary Judgment and Memorandum of Law in Support of Summary Judgment seeking judgment as a matter of law as to Plaintiff's claim of race discrimination under the THRA. Plaintiff filed her Response in opposition to Defendant's Motion for Summary Judgment on March 3, 2006. Defendant filed its Reply on March 17, 2006. Defendant's Motion for Summary Judgment is now before the Court and the Court will now consider each of Defendant's arguments in turn.

**I.     STANDARD OF REVIEW**

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the burden of showing an "absence of a genuine issue of material fact as to an essential element of the nonmovant's case." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The moving party may do this by providing affidavits or other proof or by showing lack of evidence on an issue for which the non-moving party will have the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-moving party must then present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**II.    DISCUSSION**

Plaintiff alleges that Defendant refused to promote her to CDC II based on her race, in violation of the THRA. "The stated purpose and intent of the [THRA] is to provide for execution within Tennessee of the policies embodied in the federal civil rights laws." Campbell v. Fla. Steel Corp., 919 S.W.2d 26, 31 (Tenn. 1996). Plaintiff's claim for racial discrimination under the THRA based on allegations that she was not promoted to CDC II because of race is therefore analyzed under the same analytical framework as a Title VII claim.

Under the THRA or Title VII, a plaintiff seeking to establish a claim of age or race discrimination must first prove a *prima facie* case of discrimination. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53

(1981) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). An employee "may establish a *prima facie* case of discrimination either by presenting direct evidence of intentional discrimination by the defendant, or by showing the existence of facts which create an inference of discrimination." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1248 (6th Cir. 1995) (internal citations omitted). Where, as here, no direct evidence of discrimination is available, the plaintiff may establish her *prima facie* case of discrimination with indirect, circumstantial evidence by showing that (1) she is a member of a protected class; (2) she applied for and did not receive a promotion; (3) she was qualified for the job she sought; and (4) a similarly situated person who was not in the plaintiff's protected class received the promotion at the time plaintiff's request for promotion was denied. Thurman v. Yellow Freight Sys., Inc., 90 F.3d 1160, 1166 (6th Cir. 1996); McDonnell Douglas, 411 U.S. at 802; Burdine, 450 U.S. at 252-53 (1981); Talley, 61 F.3d at 1246.

Once Plaintiff establishes a *prima facie* case, the burden of production, but not proof, shifts to Defendant to articulate a reason which, if taken as true, provides a legitimate, non-discriminatory basis for its actions. McDonnell Douglas Corp., 411 U.S. at 802; Burdine, 450 U.S. at 252-53. Defendant's burden is only of production, not persuasion. The ultimate burden of persuasion remains with Plaintiff. Id. If Defendant produces legitimate nondiscriminatory reasons for failing to promote Plaintiff, Plaintiff must then prove Defendant's reasons are a pretext for discrimination. Plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate Defendant's failure to promote her, or (3) was insufficient to warrant failure to promote her. Essentially, Plaintiff must prove that race was a determining factor in the failure to promote her. See Phelps v. Yale Sec., Inc., 986 F.2d 1020, 1023 (6th Cir. 1993).

### A. Plaintiff's *Prima Facie* Case

In the present case, Plaintiff claims that she was discriminated against when Defendant failed to promote her to the position of CDC II in September, 2004. A careful review of the record shows that although Plaintiff has set forth sufficient evidence to establish three of the four elements of a *prima facie* case, she has failed to establish the fourth element necessary to prove a case of discrimination based on failure to promote. Specifically, Plaintiff has failed to establish that Ms. Moore, the white employee who was promoted to CDC II, was "similarly-situated" to Plaintiff. Accordingly, Plaintiff has failed to establish the elements necessary

to shift the burden to Defendant.

With respect to the first three elements, it is undisputed that Plaintiff , as an African-American, is a member of a protected class, that she expressed an interest in being promoted to CDC II and that she was at least qualified enough to be considered for the promotion, and that she was denied the promotion. Defendant has not set forth any evidence that Plaintiff was required to submit a formal application or other paperwork in order to be considered for a promotion to CDC II.  Further, Defendant apparently concedes Plaintiff's qualification for the job for purposes of the summary judgment motion.  (Def.'s Memo. Supp. Mot. Summ. J. at 7-8.)  Therefore, the only disputed element with regard to Plaintiff's ability to establish a *prima facie* case is the fourth element – whether another "similarly situated" employee, who was not African-American, received a promotion when Plaintiff's request was denied.[3]

In the case at bar Plaintiff claims she was discriminated against because she was not promoted to CDC II, while at the same time Ms. Moore, a white woman in the same department and the same level, was promoted.  According to Plaintiff, her breadth of experience on several projects made her more qualified than Ms. Moore to advance to a CDC II position.  Notwithstanding, Plaintiff does not point to any specific evidence to show that she was otherwise "similarly situated" to Ms. Moore at the time the promotion decision was made.  Defendant points to the fact that Ms. Moore worked on different projects than Plaintiff and had different supervisors.  Plaintiff has not countered that evidence.  Moreover, Defendant contends that Ms. Moore had much better feedback from her supervisors than did Plaintiff; her technical skills and core competencies were higher rated, and the Data Managers were in agreement that she was ready to be promoted.  (Def.'s Memo. Supp. Mot. Summ. J. at 8.)  Consequently, there is a question as to whether Ms. Moore was truly similarly situated to Plaintiff.

In order to be deemed "similarly-situated," the employees whose treatment Plaintiff seeks to compare to her own must have similar employment status to Plaintiff's "in all of the *relevant* aspects."   Pierce v.

---

[3]Although Defendant cites to the pattern of promotions of "similarly situated" individuals in Plaintiff's department, including every other African-American employee, to support its contention that "the pattern of promotions in the Data Management Department had nothing to do with race" (Def.'s Memo. Supp. Mot. Summ. J. at 6), this evidence is not relevant to the fourth element of the *prima facie* case.  For purposes of analyzing whether Plaintiff has established a *prima facie* claim for discrimination based on Defendant's failure to promote her, the Court considers only the employee, Ms. Moore, who actually received a promotion at the same time Plaintiff claims she was denied a promotion.

9

Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994). The Sixth Circuit has made it clear that it is up to the district court to make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee. The Court will therefore consider the circumstances of the case at bar in order to determine the precise factors that should be considered "relevant" for purposes of this inquiry. Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998); Pierce, 40 F.3d at 800-02 (6th Cir. 1994). Based on the facts presented and Plaintiff's assertion that Defendant's decision not to promote Plaintiff to CDC II was racially motivated, the Court finds that Plaintiff must establish that Ms. Moore, the non-protected person who received a promotion, had similar qualifications, dealt with the same supervisor and was subject to the same standards as Plaintiff at the time the promotion decision was made. Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992).

Although it is true that at all times prior to Ms. Moore's promotion to CDC II, both Plaintiff and Ms. Moore worked in the same department under the same department manager, it is clear from the record that Plaintiff and Ms. Moore worked on different projects and dealt with different direct supervisors during their time in the department. Further, it is undisputed that the actual decision to promote Ms. Moore to CDC II was made by her supervisor, Ms. Walker Carter, in consultation with the department manager, Ms. Fasshauer, while the decision not to promote Plaintiff to CDC II was made by her supervisor Ms. Bodri, also in consultation with Ms. Fasshauer. According to Ms. Fasshauer, the decision to promote Ms. Moore did not mean that Plaintiff would not be promoted and each decision was based on the individual employee's performance reviews and feedback from the employee's supervisors. (Fasshauer Dep. 13-16.)

Based on these facts, the Court finds that Ms. Moore and Plaintiff did not deal with the same supervisor and therefore were not necessarily subject to the same standards when the promotion decision was made. Consequently, the Court finds that Plaintiff and Ms. Moore were not similarly situated for purposes of establishing *a prima facie* case for discrimination under the THRA based on Defendant's failure to promote Plaintiff. On that basis alone, Defendant is entitled to judgment as a matter of law.

Having reached that conclusion, it is not necessary to consider the parties' alternative arguments as to whether, assuming Plaintiff had established a *prima facie* case of discrimination, Plaintiff could otherwise avoid summary judgment. The Court will do so nonetheless and, as set forth below, determine in the

10

alternative that Plaintiff cannot rebut Defendant's legitimate, non-discriminatory reason for not promoting Plaintiff.

**B.    Defendant's Proffered Reason For Its Promotion Decision**

Assuming *arguendo* that Plaintiff has established the *prima facie* elements of a discrimination claim, Defendant still has the opportunity to present evidence of a non-discriminatory reason for its decision in order to rebut the resulting inference of discrimination.  Burdine, 450 U.S. at 253.  Defendant need not show that the decision was motivated by the proffered reason, only that the non-discriminatory reason is legally sufficient to justify a judgment for the defendant.  Id. at 245-55.

Defendant has presented such evidence in the form of deposition testimony by Plaintiff's department manager Ms. Fasshauer that clearly provides a non-discriminatory reason for Defendant's September 2004 decision not to promote Plaintiff to CDC II.  In her deposition, Ms. Fasshauer explained that she and Ms. Bodri made the decision not to promote Plaintiff to CDC II based on a variety of factors including Plaintiff's 2004 mid-year performance review by Ms. Bodri and negative reports received from managers and Plaintiff's co-workers about Plaintiff's attitude and her unwillingness to follow instructions and work with the project teams.  (Fasshauer Dep. 13-15.)  Specifically, Ms. Fasshauer testified that she had periodically received reports from managers and other employees that Plaintiff often made negative comments about the managers and refused to work overtime, despite the fact that the managers requested the entire team work overtime and most of the other team members agreed to do so.  (Id. 14-15.)  For example, during the first quarter of 2004, Plaintiff was working with Lisa White on a project for a particular client, and Ms. White requested that the entire team give overtime to a project that was under a time constraint.  In response, Plaintiff stated that she felt the project was not being managed properly and, based on that assertion, refused to work overtime.  (Id. at 14.)

Further, Ms. Fasshauer also testified that although both Plaintiff and Ms. Moore were college graduates with similar educational backgrounds and Ms. Moore was hired four months after Plaintiff, Ms. Moore was promoted to CDC II and Plaintiff was not because Ms. Moore had much better feedback from her supervisors and unlike Plaintiff, Ms. Moore received high ratings on her technical skills and core competencies.  Further, all three of Ms. Moore's managers were in agreement that she was ready to be

11

promoted, while Plaintiff's managers did not recommend that she be promoted at that time. In addition, unlike Plaintiff's reviews, Ms. Moore's reviews clearly indicated that she was performing well in both components required for promotion: technical and core competencies.. (Id. 15:25-16:1-5.) Finally, the fact that Ms. Moore was promoted to the same level to which Plaintiff sought a promotion did not mean that Ms. Moore's promotion precluded Plaintiff from being promoted as well. (Fasshauer Dep. 15:9-13.)

Even more importantly, it appears from Plaintiff's own testimony and her response to Defendant's motion that Plaintiff concedes Defendant has presented a legitimate reason for its failure to promote her. According to Plaintiff, Defendant's proffered reason for failing to promote her is simply "that Plaintiff did not deserve a promotion because of various perceived work deficiencies." (Pl.'s Opp. Def.'s Mot. Summ. J. at 7). Plaintiff has presented no evidence to the contrary.

### C. Whether Plaintiff Can Prove Pretext

Because Defendant has proffered a non-discriminatory explanation for its decision not to promote Plaintiff to CDC II, the burden shifts back to Plaintiff to prove that the proffered explanation for failing to promote Plaintiff was a pretext for intentional race discrimination. Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1083-84 (6th Cir. 1994). Plaintiff could meet her burden at this stage by presenting evidence suggesting that Defendant's justification (1) was not based in fact, (2) did not actually motivate Defendant, or (3) would not suffice by itself to motivate Defendant's action. Id. at 1084. If Plaintiff could produce evidence rebutting Defendant's non-discriminatory reason for its failure to promote Plaintiff and decision to promote Ms. Moore, then the Court would be permitted to infer discrimination and summary judgment in favor of Defendant would be inappropriate. Kline v. Tenn. Valley Auth., 128 F.3d 337, 347 (6th Cir. 1997).

Plaintiff argues that Defendant failed to promote her from CDC I to CDC II because she is African-American and there is a "pattern of racial animus" during her employment. (Pl.'s Dep. 98.) Plaintiff does not, however, allege any racial animus by her supervisor Ms. Bodri or her department manager Ms. Fasshauer, the people who made the decision not to promote her. Rather, in trying to rebut Defendant's reasoning and establish pretext, Plaintiff and points to her belief that "the defendant's stated reasons for not promoting [Plaintiff] were not the result of anything [she] did or failed to do. Rather, those reasons were the direct and proximate result of the defendant's failure to give [Plaintiff] a chance to do what it later proclaimed she was

12

expected to do." (Pl.'s Opp. Def.'s Mot. Summ. J. at 8.)  In support of this assertion, Plaintiff contends that Ms. Callahan, her supervisor prior to May 2004, formed opinions and made decisions about her performance that were racially motivated and that Ms. Callahan's opinion that Plaintiff was not doing a good job influenced Ms. Bodri and Ms. Fasshauer in their decision not to promote her to CDC II.  (Pl.'s Dep. 93.)

The Court acknowledges that "[a] decision-maker's self-interested testimony about his own thoughts is not unassailable [and] direct evidence of discriminatory intent is hardly ever available,"and, therefore, "a plaintiff generally resorts to circumstantial evidence to show what the decision-maker had in mind."  Kline, 128 F.3d at 348.  Yet, in the present case, Plaintiff has not presented any evidence, whether direct or circumstantial, supporting her assertion that she was not promoted to CDC II because of her race.  Plaintiff's "evidence" is limited to the fact that Ms. Moore, a Caucasian, was promoted to CDC II at the time Plaintiff's supervisors made the decision not to promote her.

According to Plaintiff, she did not lack the experience necessary for a promotion to CDC II, and if her work had been "given any type of substantive review" and had not been "minimized" when performance evaluations were given, she would have been promoted to CDC II.  (Pl.'s Opp. Def.'s Mot. Summ. J. at 7.) Aside from these conclusory statements, Plaintiff has not presented any evidence to support a finding that she was more qualified for promotion to a CDC II position than Ms. Moore, her white counterpart who was promoted.  It is well-settled in the Sixth Circuit that a plaintiff may not simply substitute her own business judgment for that of the defendant.  Rowan v. Lockheed Martin Energy Sys. Inc., 360 F.3d 544, 550 (6th Cir. 2004); see also Harper v. Georgia-Pac. Corp., 67 F. Supp. 2d 909, 914 (W.D. Tenn. 1998) ("[Plaintiff's] conclusory assertions and his assumption that discrimination was a motivating factor in his dismissal are simply not sufficient to withstand a motion for summary judgment." (Citation omitted.)).

Plaintiff concedes that her subjective impressions alone cannot carry the burden to prove that Defendant's justification for its failure to promote Plaintiff was merely pretextual.  Instead, Plaintiff contends that her interpretation of a pattern of conduct is enough.  (Pl.'s Memo. Opp. Def.'s Mot. Summ. J. at 8.) Plaintiff does not specifically identify what "pattern of conduct" she is referring to or how it relates to her claim that Defendant's decision not to promote her was racially motivated.  In fact, although Plaintiff asks the Court to ignore the fact that every other African-American employee in Plaintiff's department was promoted during

13

her tenure with Defendant, it is clear to the Court that this fact directly contradicts any allegation that there was a "pattern of conduct" such that African-American employees were treated differently than Caucasian employees. The Court therefore finds that, at best, Plaintiff has shown that Defendant treated her differently from other employees, both black and white. Despite Plaintiff's belief to the contrary, the fact that Plaintiff is African-American and she was treated differently from other employees does not prove that Defendant's failed to promote her because of her race.

In a final attempt to rebut Defendant's reasoning for its decision not to promote her and establish pretext, Plaintiff alleges that "Ms. Callahan, the previous supervisor, effectively poisoned the well as far as Ms. Bodri . . . was concerned. As a consequence [Ms.] Bodri always accentuated any negative and invariably overlooked [Plaintiff's] positive contributions." (Pl.'s Opp. Def.'s Mot. Summ. J. at 8.) A cursory review of the record reveals that this argument is without support and is in fact directly contradicted by the undisputed facts.

First, the Court notes that Plaintiff has not presented any evidence to support the contention that Ms. Callahan minimized her work or acted in any way to influence the decision not to promote Plaintiff. Rather, Plaintiff's contention is apparently based on the allegation that in 2002, two years before the promotion decision, her former supervisor Ms. Callahan made two isolated remarks that Plaintiff claims were racially derogatory, one outside of work about a restaurant employee and another about an employee in another department. (Pl.'s Dep. 90, 120-21.) As discussed below, even assuming this allegation is true, Plaintiff cannot establish that the comments are in anyway relevant to Defendant's decision not to promote Plaintiff or that they somehow evidence racial animus in Plaintiff's department, especially considering the fact that every other African-American employee in the department has been promoted at least one time. These allegations therefore do not support Plaintiff's claims of race discrimination. (Def.'s Memo. n.3, at 4.)

Although "[d]erogatory remarks by an immediate supervisor with meaningful influence on an employment decision may sometimes imply discrimination in the decision process," Wells v. New Cherokee Corp., 58 F.3d 233, 238 (6th Cir. 1995), the Court must first examine such statements and consider "whether they were related to the decision making process; whether they were more than merely vague, ambiguous, or isolated remarks, and whether they were proximate in time to the [adverse employment action]." Cooley

14

v. Carmike Cinemas, 25 F.3d 1325, 1330 (6th Cir. 1994).  Even in viewing the facts in the light most favorable to Plaintiff, the Court cannot agree with Plaintiff's contention that Ms. Callahan's two isolated, ambiguous remarks about people outside of her department, which were made two years before the promotion decision, could be related in any way to the decision not to promote Plaintiff.  Even if Ms. Callahan made the alleged remarks in the presence of Plaintiff, there is no question that Ms. Callahan was not Plaintiff's supervisor at the time Plaintiff claims she was denied a promotion, nor is there any evidence that Ms. Callahan had any influence on the decision.

Second, even if Ms. Callahan could be considered a contributor to the promotion process simply because she was Plaintiff's supervisor and conducted her performance reviews in the years preceding the decision not to promote Plaintiff, there is no evidence that Ms. Callahan's isolated and ambiguous remarks are related to Defendant's decision not to promote Plaintiff in September 2004.  See Phelps v. Yale Sec., Inc., 986 F.2d 1020, 1025 (6th Cir. 1993) (a single "[i]solated and ambiguous" remark unrelated to a suspect decision cannot establish discrimination.").  In fact, it is undisputed that Ms. Callahan did not communicate with Ms. Bodri about Plaintiff's work history or performance at any time after Ms. Bodri became Plaintiff's supervisor.  The Court finds that there is no apparent nexus between Ms. Callahan's alleged comments and Ms. Bodri's performance review of Plaintiff or Defendant's subsequent decision not to promote her, so the one cannot be construed to explain the other.

Moreover, contrary to Plaintiff's assertion, a review of Plaintiff's performance appraisals by Ms. Callahan indicate Ms. Callahan's reviews of Plaintiff were relatively good, providing positive feedback and constructive advice as to how Plaintiff could improve.  (Fasshauer Dep. 40-42.)  Specifically, in a year-end performance appraisal by Ms. Callahan prior to 2002, Ms. Callahan commented that "Anitra is a pleasure to work with.  She always has a positive attitude and is willing to help out whenever she is needed.  She is an asset to Data Management Department and Covance."  (Id. 41:1-7.)  This was followed by Plaintiff's 2002 mid-year performance appraisal wherein Ms. Callahan commented that "Anitra is doing very well in her Data Review of the 083 studies.  She stays on top of query resolution and the segment backlog for review is minimal, if any.  She could improve her skills by being more focused and avoiding distractions.  Anitra is always willing to learn a new task.  She will receive this opportunity with the Elan studies, Anitra is a pleasure

15

to work with." (Id. 41:16-24.)  Further, in Plaintiff's 2003 performance management and development plan, Ms. Callahan again gave Plaintiff a positive review and specifically provided in the "Assessment of Overall Performance and Comments" that "Anitra has done a great job since returning from maternity leave.  Anitra would like to start being groomed to be a lead data manager." (Fasshauer Dep. 42-43.)

For all the above reasons, the Court finds that even assuming that Ms. Callahan made the alleged racially insensitive remarks or inflammatory comments two years before the promotion decision, the remarks were completely unrelated to a different supervisor's decision not to promote Plaintiff and could not have "poisoned the well" about Plaintiff.  Cf. Cooley, 25 F.3d at 1330 (stray remarks, made by someone other than the decision maker in a situation unrelated to the decision-making process and not proximate in time to the decision, do not constitute evidence of discriminatory intent on the part of the decision maker).

To be clear, as indicated above, the Court finds that Plaintiff has failed to establish the elements necessary to show a *prima facie* case of racial discrimination under the THRA and for that reason, the Court holds that Defendant is entitled to judgment as a matter of law.  In the alternative, even if the Court assumes Plaintiff has set forth sufficient evidence to show the elements for a *prima facie* case of discrimination under the THRA based on Defendant's failure to promote her, Plaintiff has failed to present sufficient evidence to rebut Defendant's legitimate and non-discriminatory reason for its September 2004 decision not to promote her.  Accordingly, Plaintiff cannot satisfy her burden of persuasion as to her discrimination claim and Defendant Covance is entitled to judgment as a matter of law on that basis as well.

### III. CONCLUSION

For the reasons set forth above and for good cause shown, the Court will grant Defendant Covance's Motion for Summary Judgment and dismisses all claims set forth in Plaintiff's complaint.

An appropriate Order will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge

16